# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

National Shooting Sports Foundation, Inc.,

     *Plaintiff,*

        v.                 No. 3:23-cv-02791

Kwame Raoul,
Attorney General of the State of Illinois,

     *Defendant.*

## **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 6

    I.    Plaintiffs Are Likely To Succeed On The Merits ................................................ 6

        A.    The PLCAA Preempts HB 218 ................................................................ 6

        B.    HB 218 Violates the First Amendment .................................................... 11

        C.    HB 218 Violates Due Process Twice Over ............................................. 15

        D.    HB 218 Violates the Second Amendment ............................................... 16

        E.    HB 218 Exceeds Constitutional Limits on Extraterritorial State Regulation ............ 18

    II.    The Remaining Factors All Favor Injunctive Relief ......................................... 20

CONCLUSION .............................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
    517 U.S. 484 (1996) .................................................................................... 12

*Am. C.L. Union of Ill. v. Alvarez*,
    679 F.3d 583 (7th Cir. 2012) ...................................................................... 20

*Ashcroft v. Free Speech Coal.*,
    535 U.S. 234 (2002) .................................................................................... 15

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .................................................................................... 11

*Atkinson v. Garland*,
    70 F.4th 1018 (7th Cir. 2023) .................................................................... 17

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005) .......................................................................... 10

*Bank of Am. Corp. v. City of Miami*,
    581 U.S. 189 (2017) .................................................................................... 10

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973) .................................................................................... 15

*Brown v. Ent. Merchs. Ass'n*,
    564 U.S. 786 (2011) .................................................................................... 12

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
    273 F.3d 536 (3d Cir. 2001) ................................................................... 2, 18

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980) .................................................................................... 12

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ............................................................. 2, 10, 18

*City of N.Y. v. Beretta*,
    524 F.3d 384 (2d Cir. 2008) .................................................................. 7, 8, 9

*City of Phila. v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002) ...................................................................... 10

*Cmty. Pharmacies of Ind., Inc. v. Ind. Fam. & Soc. Servs. Admin.*,
    801 F.Supp.2d 802 (S.D. Ind. 2011) ................................................................ 20

*Comptroller of Treasury of Md. v. Wynne*,
    575 U.S. 542 (2015) ......................................................................................... 19

*Connally v. Gen. Constr. Co.*,
    269 U.S. 385 (1926) ......................................................................................... 15

*Craig v. Boren*,
    429 U.S. 190 (1976) ......................................................................................... 20

*Cramp v. Bd. of Pub. Instruction of Orange Cnty.*,
    368 U.S. 278 (1961) ......................................................................................... 15

*Daniels Sharpsmart, Inc. v. Smith*,
    889 F.3d 608 (9th Cir. 2018) ............................................................................ 19

*Dist. of Columbia v. Beretta U.S.A. Corp.*,
    940 A.2d 163 (D.C. 2008) .................................................................................. 3

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ......................................................................... 6, 20

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ......................................................................................... 15

*Hazardous Waste Treatment Council v. South Carolina*,
    945 F.2d 781 (4th Cir. 1991) ............................................................................ 20

*Holmes v. Secs. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ......................................................................................... 10

*Ileto v. Glock*,
    565 F.3d 1126 (9th Cir. 2009) .............................................................. 7, 8, 10, 11

*In re Acad., Ltd.*,
    625 S.W.3d 19 (Tex. 2021) ................................................................................. 3

*Joelner v. Vill. of Wash. Park*,
    378 F.3d 613 (7th Cir. 2004) ............................................................................ 20

*Johnson v. United States*,
    576 U.S. 591 (2015) ......................................................................................... 16

*Junior Sports Magazines Inc. v. Bonta*,
    --- F.4th ----, 2023 WL 5945879 (9th Cir. Sep. 13, 2023)..............................13

*Legato Vapors, LLC v. Cook*,
    847 F.3d 825 (7th Cir. 2017) ...............................................................19

*Lorillard Tobacco Co. v. Reilly*,
    533 U.S. 525 (2001) ..........................................................................12

*Mitchell v. Baker*,
    2015 WL 278852 (S.D. Ill. Jan. 21, 2015) ...........................................20

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    142 S.Ct. 2111 (2022) .......................................................................17

*NAACP v. Button*,
    371 U.S. 415 (1963)..........................................................................14

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023)..........................................................................18

*NSSF v. Platkin*,
    2023 WL 1380388 (D.N.J. Jan. 31, 2023) ....................................7, 8, 11

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
    309 A.D.2d 91 (N.Y. App. Div. 2003)..................................................10

*Reno v. ACLU*,
    521 U.S. 844 (1997)..........................................................................14

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)..........................................................................12

*Teixeira v. Cnty. of Alameda*,
    873 F.3d 670 (9th Cir. 2017) ...............................................................17

*United States v. Oakland Cannabis Buyers' Coop.*,
    532 U.S. 483 (2001) ..........................................................................20

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982) ..........................................................................15

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001)..........................................................................11

**Statutes**

15 U.S.C. §7901(a)(4) .............................................................................................. 9

15 U.S.C. §7901(a)(5) .............................................................................................. 9

15 U.S.C. §7901(a)(6) ................................................................................ 2, 7, 11, 19

15 U.S.C. §7901(a)(7) ................................................................................ 3, 6, 11, 18

15 U.S.C. §7901(b)(1) ........................................................................................ 2, 11

15 U.S.C. §7902(a) ...................................................................................... 2, 6, 20

15 U.S.C. §7903(2)-(6) ............................................................................................ 2

15 U.S.C. §7903(5)(A) ..................................................................................... *passim*

430 ILCS 65/4(a)(2) ............................................................................................. 13

815 ILCS 505/10 .................................................................................................... 6

815 ILCS 505/2BBBB-(a) ........................................................................................ 4

815 ILCS 505/2BBBB-(b) ...................................................................................... 13

815 ILCS 505/2BBBB-(b)(1) ............................................................................ *passim*

815 ILCS 505/2BBBB-(b)(2) ............................................................................... 5, 11

815 ILCS 505/2BBBB-(b)(3) ............................................................................ *passim*

815 ILCS 505/7-(a) ............................................................................................. 6, 9

815 ILCS 505/7(a)-(c) ............................................................................................ 6

**Other Authorities**

Office of the Att'y Gen., *Attorney General Raoul Applauds House Passage of
    Legislation to Hold Gun Industry Accountable for Unlawful Consumer Practices*
    (May 10, 2023), bit.ly/3rZ11it ......................................................................... 1

Recent Legislation, *Protection of Lawful Commerce in Arms Act*,
    119 Harv. L. Rev. 1939 (2006) ......................................................................... 2

Sharon Walsh, *Gun Industry Views Accord as Dangerous Crack in Its Unity*,
    Wash. Post (Mar. 18, 2000), https://wapo.st/2Zcp5KS ..................................... 2

## INTRODUCTION

Congress passed the Protection of Lawful Commerce in Arms Act ("PLCAA") to stamp out efforts to use nebulous "reasonableness" standards to make federally licensed manufacturers and sellers of firearms pay for harms caused by criminals who misuse their products.  Yet that did not stop lawmakers in Springfield from trying to foist exactly that sort of liability on licensed members of the firearms industry, which most of Plaintiff NSSF's members are.  House Bill 218 ("HB 218") was passed to provide individuals affected by gun violence with "a path to justice in Illinois civil court."  Office of the Att'y Gen., *Attorney General Raoul Applauds House Passage of Legislation to Hold Gun Industry Accountable for Unlawful Consumer Practices* (May 10, 2023), bit.ly/3rZ11it.  But rather than target the criminals responsible for causing harm, the statute focuses on "hold[ing] gun manufacturers accountable." *Id.*  HB 218 sweeps far beyond the sort of unlawful conduct its proponents claim to want to rein in, imposing tort-law liability on firearm industry members if a state judge or jury later decides that their conduct "create[d], maintain[ed], or contribute[d] to a condition in Illinois that endangers the safety or health of the public," even if that conduct was not independently unlawful.  815 ILCS 505/2BBBB-(b)(1).[1]  Lawful conduct protected by the First and Second Amendments thus may give rise to state-law tort liability if a product is misused in Illinois by someone else.  That is precisely what the PLCAA preempts.

That is reason enough to enter an injunction, but additional reasons abound, as HB 218 violates the Constitution many times over.  NSSF is thus more than likely to succeed on the merits, and the remaining factors favor NSSF as well.  Inflicting an unconstitutional statute on members causes irreparable harm as a matter of law, especially when it chills constitutionally protected speech and conduct.  Enforcing unconstitutional laws, by contrast, is never in the public interest.

---

[1] References to HB 218 are to sections of the Illinois Compiled Statutes.

## BACKGROUND

1. In the 1990s, state and local governments initiated a series of lawsuits in response to concerns about violent crimes involving firearms.  Yet rather than train their sights on the criminals responsible for those acts, they sued licensed manufacturers and distributors of legal firearms that were lawfully manufactured and sold and that functioned as intended.  *See Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 538 (3d Cir. 2001) (per curiam); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1147-48 (Ill. 2004).  While many of these suits failed, the real goal was to hobble the industry.  Recognizing that "[t]he legal fees" needed to defend against a rising tide of similar suits "alone" would have been "enough to bankrupt the industry," Sharon Walsh, *Gun Industry Views Accord as Dangerous Crack in Its Unity*, Wash. Post (Mar. 18, 2000), https://wapo.st/2Zcp5KS, states "pressed on," "regardless of their chance of success, spending taxpayers' money in a war of attrition against the firearms industry," Recent Legislation, *Protection of Lawful Commerce in Arms Act*, 119 Harv. L. Rev. 1939, 1940 (2006).

2. Congress passed the PLCAA to end those efforts.  The PLCAA's very first enumerated "purpose[]" is to "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations" based on harm "caused by the criminal or unlawful misuse of firearm products" by third parties.  15 U.S.C. §7901(b)(1); *see also id*. §7901(a)(6) (such suits are "an abuse of the legal system, … threaten[] the diminution of a basic constitutional right and civil liberty, … and constitute[] an unreasonable burden on interstate and foreign commerce").  The statute makes good on that promise, broadly prohibiting "any person," "including any governmental entity," from bringing any civil action against any federally licensed "manufacturer or seller" of firearms or related products for "relief[] resulting from the criminal or unlawful misuse of a qualified product by … a third party."  15 U.S.C. §§7902(a), 7903(2)-(6).  That is not just a defense against liability; it confers substantive

"immunity" from certain suits altogether. *In re Acad., Ltd.*, 625 S.W.3d 19, 33-34 (Tex. 2021).

That immunity from suit is subject to only a handful of exceptions. As relevant here, the PLCAA does not preempt actions in which a federally licensed manufacturer or seller is alleged to have "knowingly violated a State or Federal statute applicable to the sale or marketing of [a firearm or related] product" where "the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. §7903(5)(A)(iii). This provision is known as the "predicate exception" because, "to take effect, it requires that the manufacturer or seller have committed an underlying (or predicate) statutory violation." *Dist. of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 168 (D.C. 2008). Congress made clear, however, that not just any statutory violation will suffice. The predicate exception covers only actions that require a "knowing[]" violation that was "a proximate cause" of the plaintiff's injury. 15 U.S.C. §7903(5)(A)(iii). And it provides two examples of the types of statutes that suffice, each of which imposes specific obligations on how firearms may be sold: a law imposing record-keeping requirements; and a law prohibiting firearms suppliers from aiding, abetting, or conspiring in straw purchases of their products. *Id.* §7903(5)(A)(iii)(I)-(II).

None of the PLCAA's enumerated exceptions covers state laws that authorize imposition of liability against manufacturers and sellers of firearms and ammunition for harms more directly caused by the criminal conduct of third parties. To the contrary, such laws, founded on novel expansions of tort law, are exactly what the PLCAA was enacted to stamp out. *See id.* §7901(a)(7).

3. The PLCAA accomplished Congress' goal of deterring intrepid state and local governments from seeking to hold the firearms industry liable for criminals' misdeeds for a while. But not forever. Illinois recently joined a growing effort by a handful of states to jump back into the fray, enacting HB 218, a law specifically crafted to try to circumvent the PLCAA.

HB 218 adds a new cause of action under the Consumer Fraud and Deceptive Business

Practices Act that applies only to "firearm industry member[s]," i.e., those "engaged in the design, manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products, including sales by mail, telephone, or Internet or in-person sales." 815 ILCS 505/2BBBB-(a). The new cause of action is sweeping. First, a "firearm industry member" may be held liable for "the sale, manufacturing, importing, or marketing of a firearm-related product" if that conduct is later deemed to have "create[d], maintain[ed], or contribute[d] to a condition in Illinois that endangers the safety or health of the public." *Id.* 505/2BBBB-(b)(1). HB 218 is thus *not* limited to *unlawful* conduct: Even conduct that was fully compliant with federal law and the law of the state where and when it occurred can be the basis for liability if an Illinois court deems it "unreasonable under all circumstances." *Id.* Lawful conduct protected by the First Amendment ("marketing") and the Second Amendment ("manufacturing" and "sale" of a "firearm-related product") may thus be the basis of an Illinois tort action if a lawful product lawfully marketed, lawfully made, and lawfully sold is later used or possessed unlawfully *by someone else* in Illinois.

HB 218 provides no clarity on what is considered "unreasonable under all circumstances," but it does make clear, that at a minimum, industry members are liable for "failing to establish or utilize reasonable controls." To make matters worse, HB 218 does not key "reasonable controls" solely to the many federal and state laws with which firearms manufacturers and sellers must already comply. Instead, it supplies a recursive gloss: "Reasonable controls" means "reasonable procedures, safeguards, and business practices" that are designed to achieve a series of broad goals such as "prevent the loss or theft of a firearm-related product" or prevent the sale of a firearm-related product to a person "at substantial risk of using a firearm-related product to harm … another individual"—which describes most individuals with a heightened need to lawfully possess and carry a firearm for self-defense. *Id.* 505/2BBBB-(b)(1)(A)-(B). In sum, industry members can be

held liable under HB 218 for not using some unnamed and indeterminable procedures that a court retroactively decides may have been helpful in preventing third-party criminal conduct—even if the entirety of the industry member's business occurs outside of Illinois.

Second, HB 218 imposes liability on industry members for "[a]dvertis[ing], market[ing], or promot[ing] a firearm-related product in a manner that reasonably appears to support, recommend, or encourage individuals" who are not in "any duly authorized military" to "use a firearm-related product for a military-related purpose in Illinois." *Id.* 505/2BBBB-(b)(2). The statute does not define "military-related purpose"; nor does it require that purpose to be unlawful.

Third, HB 218 makes it unlawful to "[a]dvertise, market, promote, design, or sell any firearm-related product in a manner that reasonably appears to support, recommend, or encourage persons under 18 years of age to unlawfully purchase or possess or use a firearm-related product in Illinois." *Id.* 505/2BBBB-(b)(3). When it comes to alleged violations of this provision, HB 218 instructs courts to consider "the totality of the circumstances, including" whether the industry member "offers firearm-related products in sizes … specifically designed to be used by … minors" (such as youth-model hunting rifles) or "uses images or depictions of minors in advertising or marketing, or promotion materials, to depict the use of firearm-related products." *Id.* 505/2BBBB-(b)(3)(A). The statute provides a limited exception for "communications or promotional materials regarding lawful recreational activity with a firearm." *Id.* 505/2BBBB-(b)(3)(B).

HB 218 is actionable pursuant to the Consumer Fraud and Deceptive Business Practices Act. Section 10a authorizes private suits against HB 218 violators and allows courts to "award actual economic damages or any other relief which the court deems proper," including punitive damages. *Id.* 505/10a(a). Similarly, "the Attorney General or a State's Attorney" may bring suit against any person who "is using, has used, or is about to use any method, act or practice declared

5

by [HB 218] to be unlawful." *Id.* 505/7-(a).  The court "may exercise all powers necessary, including but not limited to: injunction; revocation, forfeiture or suspension of any license, charter, franchise, certificate or other evidence of authority" and "may impose a civil penalty in a sum not to exceed $50,000." *Id.* 505/7(a)-(c); *see also id.* 505/10 (Attorney General may recover costs).

## ARGUMENT

"To win a preliminary injunction, a party must show that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011).  If a movant meets these requirements, the court "weighs the factors against one another, assessing whether the balance of harms favors the [movant] or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.*  Each factor is readily satisfied here.

## I.    Plaintiffs Are Likely To Succeed On The Merits.

### A.    The PLCAA Preempts HB 218.

The PLCAA imposes clear restrictions:  A "civil liability action … against a manufacturer or seller of [firearms and related products]" that seeks "damages … or other relief, resulting from the criminal or unlawful misuse of a qualified product by … a third party," "may not be brought in any Federal or State court."  15 U.S.C. §§7902(a), 7903(5)(A).  The Act's unambiguous goal is to foreclose efforts to impose such expansive liability on those who engage in lawful commerce in arms.  *Id.* §7901(a)(7).  Nevertheless, HB 218 authorizes Illinois courts to make licensed industry members pay to redress harms caused by third-party and criminal misuse of their lawful products.  Illinois' apparent belief that it may revive exactly the kind of amorphous tort liability that Congress set out to inter simply by codifying such theories in a statute must be met with greatest of skepticism and confirmed only by the plainest of text.  Illinois cannot meet that burden.

Illinois will likely argue that HB 218 is saved from preemption by the so-called "predicate

exception," i.e., 15 U.S.C. §7903(5)(A)(iii), which exempts actions "in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." But as several courts have already explained, the predicate exception cannot sensibly be read to exempt any and all statutes that apply to the firearms industry, as such a capacious reading "would allow the predicate exception to swallow the statute." *City of N.Y. v. Beretta*, 524 F.3d 384, 403 (2d Cir. 2008). And it certainly cannot be read to cover state statutes that merely codify the same common-law causes of action, and hence invite the very same "'judicial evolution' [that] was precisely the target of the PLCAA." *Ileto v. Glock*, 565 F.3d 1126, 1134 (9th Cir. 2009). The predicate exception is instead properly read to exempt only actions predicated on laws that impose concrete obligations or prohibitions that industry members can actually *knowingly* violate, not laws that merely impose the same general duties of care that Congress concluded do not countenance "imposing liability on an entire industry for harm that is solely caused by others." 15 U.S.C. §7901(a)(6). That conclusion follows directly from text, context, and common sense.

Start with the text. The predicate exception is not an all-encompassing carve-out for any violation of any statute implicating the firearm industry; rather, it saves "an action" from preemption only to the extent the action alleges that "a manufacturer or seller of a qualified product knowingly violated a State or Federal statute … and the violation was a proximate cause of the harm for which relief is sought." *Id.* §7903(5)(A)(iii). That language presumes some requirement or obligation sufficiently concrete that an industry member can actually knowingly violate it at the time of manufacture or sale. *See NSSF v. Platkin*, 2023 WL 1380388, at *6 (D.N.J. Jan. 31, 2023) (granting preliminary injunction against similar law) ("The knowingly requirement of the predicate exception necessitates the actor to have a sufficiently concrete duty to have knowingly violated a

relevant statute."), *vacated on other grounds*, --- F.4th ----, 2023 WL 5286171 (3d Cir. 2023).

The illustrative examples Congress supplied in the predicate exception itself confirm the point. "The general language … []providing that predicate statutes are those 'applicable to' the sale or marketing of firearms[] is followed by the more specific language referring to statutes imposing record-keeping requirements on the firearms industry, 15 U.S.C. §7903(5)(A)(iii)(I), and statutes prohibiting firearms suppliers from conspiring with or aiding and abetting others in selling firearms directly to prohibited purchasers, 15 U.S.C. §7903(5)(A)(iii)(II)." *Beretta*, 524 F.3d at 402. "Thus," under basic principles of interpretation, the general "applicable to" language in §7903(5)(A)(iii) must be "construed to embrace only objects similar to those enumerated by" the two specific examples that follow. *Id.*; *accord Platkin*, 2023 WL 1380388, at *6. "Indeed, if *any* statute that 'could be applied' to the sales and manufacturing of firearms qualified as a predicate statute, there would be no need to list examples at all." *Ileto*, 565 F.3d at 1134.

Notably, both examples require a violation of a concrete obligation or prohibition. The first requires a knowing violation of a recordkeeping requirement, e.g., knowingly entering false information or knowingly failing to enter required information. 15 U.S.C. §7903(5)(A)(iii)(I). The second requires a knowing violation of the obligation not to knowingly facilitate straw purchases, e.g., by aiding, abetting, or conspiring to sell a firearm to someone the seller knows or has reasonable cause to believe is buying it for a prohibited person. *Id.* §7903(5)(A)(iii)(II). Those examples look nothing like HB 218. To be sure, HB 218 does require—at least in one provision— that an industry member act "[k]nowingly." *Id.* 505/2BBBB-(b)(1). But that merely requires that the industry member knowingly *engaged in the challenged conduct*; it does not require actual knowledge *that the conduct is illegal*. Nor could it. Unlike the concrete obligations typified by the predicate exception examples, HB 218 simply commands industry members to act

"reasonably" without any *ex ante* guidance as to what procedures are not "reasonable" enough.

HB 218's undisguised effort to shoehorn general negligence and nuisance claims into the predicate exception fails, as the PLCAA's expressly enumerated findings reinforce what the text makes clear: the predicate exception applies only to laws that impose concrete obligations or prohibitions, not general duties of care.  The PLCAA's chief aim is to foreclose efforts to hold those engaged in "the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products" "liable for the harm caused by those who criminally or unlawfully misuse firearm products."  15 U.S.C. §7901(a)(5).  And as the Second Circuit explained, the term "lawful" is best understood in light of statutory context to mean "activities having been done in compliance with statutes like those described in" the immediately preceding finding: "the Gun Control Act of 1968, the National Firearms Act, and the Arms [Export] Control Act."  *Beretta*, 524 F.3d at 402-03; *see* 15 U.S.C. §7901(a)(4).  Those laws do not impose amorphous commands to act "reasonably"; they are comprehensive regulations imposing concrete obligations or prohibitions with which one can confidently ensure compliance in real time.

Moreover, whereas the predicate exception is limited to cases in which an industry member's knowing "violation" of a statute "was a proximate cause of the harm for which relief is sought," 15 U.S.C. §7903(5)(A)(iii), HB 218 does not require proximate cause in the traditional sense.  Rather, pursuant to Section 7 of the Consumer Fraud and Deceptive Business Practices Act, the Attorney General or a State's Attorney can sue an industry member whenever it can be said to have "contribute[d] to a condition in Illinois that endangers the safety or health of the public by … failing to establish or utilize reasonable controls."  815 ILCS 505/2BBBB-(b)(1); *see also id.* 505/7-(a).  For these suits, nothing requires that the failure "to establish or utilize reasonable

control" be a traditional proximate cause of the ultimate harm.[2]  Of course, that is consistent with HB 218's discernable aim of holding the firearm industry liable for third-party harms.  But it is antithetical to the PLCAA, which Congress enacted against the backdrop of state and municipality suits that sought to impose liability on licensed firearm industry members precisely by shirking traditional notions of proximate cause.  *See, e.g.*, *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 419-20 (3d Cir. 2002); *Camden*, 273 F.3d at 540-41.  That is why the predicate exception makes proximate cause non-negotiable.  And under traditional proximate cause, "foreseeability alone is not sufficient," *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 201 (2017); there must be a "direct relation between the injury asserted and the injurious conduct alleged," *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).  HB 218 discards any such requirement.

The fact that Illinois has codified this broad tort liability in a statute changes nothing.  As the Ninth Circuit made clear, "the text and purpose of the PLCAA show[] that Congress intended to preempt general tort theories of liability even in jurisdictions … that have codified such causes of action" in statutes applicable to the firearms industry.  *Ileto*, 565 F.3d at 1136.  *Ileto* thus squarely held that the predicate exception does not save "'classic negligence and nuisance'" claims just because a state "codifie[s] such causes of action."  *Id.* at 1135-36.  For good reason: The problem Congress had with the amorphous suits it enacted the PLCAA to stamp out was not that they were brought pursuant to the common law.  It was that they sought to "expand civil liability in a manner

---

[2] The Supreme Court of Illinois has explained that "[p]roximate causation is an element of all *private* causes of action under [Section 10 of] the Act."  *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) (emphasis added).  Indeed, in this very context the court made clear that firearm industry members' "lawful commercial activity … may not be considered a proximate cause of" "harm to person and property caused directly and principally by the criminal activity of intervening third parties."  *City of Chicago*, 821 N.E.2d 1099, 1136 (Ill. 2004) (quoting *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 103 (N.Y. App. Div. 2003)).  But the court has not imposed the same constraint on the public suits authorized by Section 7.

never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States" (until now, apparently) and constituted an "abuse of the legal system." 15 U.S.C. §7901(a)(6)-(a)(7). Indeed, several of the cases that spurred Congress to enact the PLCAA involved both common-law and statutory nuisance claims. *See, e.g.*, *Ileto*, 565 F.3d at 1130. Yet Congress said not a word about saving novel expansions of the common law that have the imprimatur of the state legislature, and instead opted "[t]o prohibit [such] causes of action" entirely. 15 U.S.C. §7901(b)(1). The notion that states can avoid that prohibition by codifying the same "causes of action" the PLCAA was specifically enacted to "prohibit" beggars belief. Just as Congress does not "hide elephants in mouseholes," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001), it does not pass laws with trap doors making them trivially easy to evade. On the contrary, as the Supreme Court has long made clear, a statute "cannot be held to destroy itself." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011). Yet that is precisely what Illinois seeks. In short, "[t]o read [HB 218] as fitting within the predicate exception would run afoul of the goals of the PLCAA and would, in fact, 'gut the PLCAA.'" *Platkin*, 2023 WL 1380388, at *7.

## B.    HB 218 Violates the First Amendment.

In addition to regulating the manufacture and sale of constitutionally protected products, HB 218 regulates—indeed, allows courts to enjoin—constitutionally protected speech. HB 218 subjects industry members to liability if their "marketing" is deemed to have "contribute[d] to a condition in Illinois that endangers the safety or health of the public." 815 ILCS 505/2BBBB-(b)(1). It prohibits industry members from "[a]dvertis[ing], market[ing[], or promot[ing]" their lawful products in ways that encourage non-servicemembers "to use a firearm-related product for a military-related purpose." *Id.* 505/2BBBB-(b)(2). And it authorizes liability for speech that "reasonably appears" to encourage minors to "unlawfully purchase *or* possess *or* use a firearm-related product," apparently even if the possession or use is *not* unlawful. *Id.* 505/2BBBB-(b)(3)

(emphases added). HB 218 thus plainly—and unconstitutionally—restricts protected speech.

To be sure, the First Amendment does not preclude liability for false or "misleading" commercial speech or for speech that encourages unlawful conduct. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563-64 (1980). But HB 218 is not so limited. Marketing materials with accurate specifications of lawful products may trigger liability under HB 218 if they are deemed to be "unreasonable under all circumstances" or if they describe a youth-model firearm, even if they are targeted at adults lawfully permitted to purchase those lawful arms. *See* 815 ILCS 505/2BBBB-(b)(1), (b)(3). Yet truthful speech promoting lawful products enjoys full constitutional protection under black-letter law, even if the products have deleterious health effects. *See, e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001) (tobacco); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 (1996) (liquor). And as the Supreme Court made clear in *Sorrell*, "the State may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements" just because it "finds expression too persuasive." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577-78 (2011). That is true *a fortiori*, of course, when the disfavored product is one the Constitution expressly protects.

All of that means that Illinois must affirmatively prove that HB 218 satisfies heightened scrutiny. It cannot do so. Despite ostensibly being motivated by a desire to reduce gun violence, HB 218 does nothing to police the conduct of criminals who misuse firearms. Nor does it regulate vast swaths of speech—action films, violent video games, direct incitements to violence, and countless others—that may actually encourage criminal gun violence. HB 218 is thus "wildly underinclusive" when judged against the state's asserted interest, which calls into question what is really animating it. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 801-02 (2011). And far from being narrowly tailored, HB 218 is radically overinclusive: It imposes liability for any firearms

marketing that might later be thought to have "contribute[d] to a condition in Illinois that endangers the safety or health of the public" or "encourage[d]" non-servicemembers to use a firearm for "a military-related purpose."  815 ILCS 505/2BBBB-(b).  Such sweeping restrictions are destined (and designed) to chill the right to encourage the exercise of Second Amendment rights.  To take just one example, this prohibition is so broad that it may make it unlawful for a manufacturer to run an advertisement that says, "If it's good enough for the Army, it's good enough for you."

HB 218's prohibition on marketing that "reasonably appears" to encourage minors to "unlawfully purchase or possess or use a firearm-related product," *id.* 505/2BBBB-(b)(3), is arguably even worse, as it seems to cover ads that encourage *adults* to buy firearms that are *lawful* and *safer for minors to (lawfully) use*.  *See, e.g.*, Decl. of Anthony Imperato (Ex. A) ¶¶12-20.  A state surely may ban speech directly concerning *unlawful* conduct.  But unless this provision covers nothing more than advertisements that tell minors to buy guns, it is not at all clear what it means; after all, there are many contexts in which minors lawfully may use firearms in Illinois, provided they have "the written consent of [a] parent."  430 ILCS 65/4(a)(2).  Compounding the problem, in determining whether marketing is prohibited, HB 218 tells courts to consider practices with no connection to unlawful activity, e.g., whether an industry member "offers brand name merchandise for minors … that promotes a firearm industry member or firearm-related product."  815 ILCS 505/2BBBB-(b)(3)(A)(ii).  To state the obvious, there is nothing unlawful about such merchandise. HB 218 further instructs courts to be suspicious of "offer[ing] firearm-related products … that are specifically designed to be used by … minors," *id.* 505/2BBBB-(b)(3)(A)(iii), even though it is lawful (indeed, sensible) to design products that are safer for minors to use.  HB 218 is thus the definition of unduly burdensome restriction on speech. *See Junior Sports Magazines Inc. v. Bonta*, --- F.4th ----, 2023 WL 5945879 (9th Cir. Sep. 13, 2023) (holding similar law unconstitutional).

13

In addition to flunking ordinary First Amendment review, HB 218 also suffers from a fatal vagueness problem. Vagueness "raises special First Amendment concerns because of its obvious chilling effect on free speech." *Reno v. ACLU*, 521 U.S. 844, 871-72 (1997). HB 218 makes it all but impossible to tell what speech is and is not permitted. *See* Decl. of Susan Cupero (Ex. B) ¶11; Imperato Decl. ¶19. As explained, HB 218 not only appears to cover encouraging *lawful* uses, but gives no guidance on how to draw the line between permissibly encouraging the lawful use of firearms and impermissibly encouraging unlawful use. And the "reasonably appears" standard just compounds the problem, as it creates vast discretion as to which speech is and is not protected. To be sure, statutes need not resolve all potential complications they may create. But when it comes to laws that prohibit speech—and speech about the exercise of constitutional rights, no less—lack of clarity is destined to chill core protected speech. And here, outside of a narrow exception for "communications or promotional materials regarding lawful recreational activity," 815 ILCS 505/2BBBB-(b)(3)(B), it is impossible to know what marketing will be deemed to have encouraged minors to unlawfully purchase or use firearms. Indeed, HB 218 "appears to prevent" licensed dealers "from continuing to promote firearm safety for minors, even though minors may lawfully use firearms in Illinois in a number of circumstances, and even though many [parents] want to introduce their minor children to hunting." Decl. of Michael Scannell (Ex. C) ¶12.

It is thus unsurprising that HB 218 has already "provoke[d] uncertainty among speakers," *Reno*, 521 U.S. at 871, and led some to cease previous promotional practices. *See* Decl. of James E. Hood (Ex. D) ¶¶7-14. That is a reasonable response to the statute, which does not articulate at all—let alone with "narrow specificity," *see NAACP v. Button*, 371 U.S. 415, 433 (1963)—what may give rise to liability. But a law that puts speakers to that choice is not just unreasonable, but unconstitutional. Only an injunction can prevent HB 218 from continuing to "prohibit[] or chill[]"

protected expression, *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002), and destroying the "breathing space" that "the First Amendment needs," *Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973), especially when it comes to speech that promotes the exercise of a constitutional right.

### C.     HB 218 Violates Due Process Twice Over.

1. For many of the same reasons that HB 218 is unconstitutionally vague with respect to protected speech, it is also unconstitutionally vague under the Due Process Clause with respect to all the conduct it polices.  A law that forbids or requires an act "in terms so vague that men of common intelligence must necessarily guess at its meaning … violates the first essential of due process," *Connally v. Gen. Constr. Co*., 269 U.S. 385, 391 (1926), as does a law with terms so malleable that it authorizes "arbitrary [or] discriminatory enforcement," *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  For all the reasons already discussed, "[t]he vice of unconstitutional vagueness is further aggravated" in the First Amendment context.  *Cramp v. Bd. of Pub. Instruction of Orange Cnty*., 368 U.S. 278, 287 (1961).  But it is not just First Amendment concerns that demand regulation with especial precision; a more "stringent" vagueness test applies for statutes that "threaten[] to inhibit the exercise of constitutionally protected rights" of any kind, as well as for statutes that impose "quasi-criminal" penalties, whether they regulate speech or not. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc*., 455 U.S. 489, 499 (1982).

The most protective vagueness standard known to law thus applies several times over.  And HB 218 flunks it.  Rather than identify concrete obligations with specificity, HB 218 issues a sweeping command that industry members adopt any and all procedures "designed to" "prevent" a litany of abstract goals, including (but not limited to) the loss or theft of firearms and the sale of firearms to individuals who may use it to harm others—even under lawful circumstances.  815 ILCS 505/2BBBB-(b)(1).  What that means is anyone's guess.  Do manufacturers need to provide training to retailers on how to prevent straw purchases or theft from their stores, even if they do

not sell directly to retailers and even though no source of law actually imposes that obligation? *See* Decl. of Sarah Larson (Ex. E) ¶8.  Is it enough to have security cameras, or do they need a security guard?  *See* Hood Decl. ¶5.  There is no way to know under the statute, leaving plaintiffs free to insist, and courts free to find, that a licensed (and heavily regulated) retailer or manufacturer failed to institute reasonable controls because it "could have done more"—which of course is *always* true in *every* context.  And that is not the worst of it:  Even if an industry member establishes that it utilized "reasonable controls," it can still be found liable if its conduct is nonetheless deemed to be "unreasonable under all circumstances."  *See* 815 ILCS 505/2BBBB-(b)(1).

Simply put, HB 218 is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  Due process demands far more.

### D.    HB 218 Violates the Second Amendment.

HB 218 violates the Second Amendment in two distinct ways.  First, it operates as a ban on particular types of firearms.  "It is an unlawful practice" under HB 218 for a "firearm industry member" to "design[] or sell" "any firearm-related product in a manner that reasonably appears to support, recommend, or encourage persons under 18 years of age to unlawfully purchase or possess or use a firearm-related product in Illinois." 815 ILCS 505/2BBBB-(b)(3).  (HB 218 also prohibits "advertis[ing], market[ing], [or] promot[ing]" such products, in violation of the First Amendment, as discussed in Part I.B.)  HB 218 thus effectively bans *every youth-model firearm*, by making it illegal for any industry member to "sell" any firearm that is "design[ed] … in a manner that reasonably appears" to "encourage" minors to "possess or use" a firearm lawfully purchased by an adult for their lawful use in Illinois.  As a result of this sweeping prohibition on common firearms, many NSSF members now face the Hobson's choice of either ceasing to manufacture and sell constitutionally protected products, or risking being subjected to onerous liability under HB 218.  *See, e.g.*, Imperato Decl. ¶¶12-14 (licensed manufacturer designs and sells long guns

specifically designed for minors); Hood Decl. ¶¶6-8 (licensed dealer in Benton sells youth-model firearms); Scannell Decl. ¶¶10-11 (licensed dealer in Granite City sells youth-model firearms).

To be clear, NSSF members do not sell their products to children or other persons who may not purchase firearms. But NSSF members do manufacture firearms that are specifically designed to be safer for minors to use—which minors may lawfully do in many circumstances in Illinois—and they sell these youth-model rifles, shotguns, and other models *to adults* who want to introduce their children to shooting sports, hunting, and other lawful recreational activities.

HB 218's ban on these common arms is flatly unconstitutional. At the threshold, acquiring firearms is obviously covered by the Second Amendment. As the Ninth Circuit explained even before *Bruen*, "the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc). The burden is thus on the state to affirmatively demonstrate that precluding adults from purchasing firearms designed specifically to be safer for minors to lawfully use "is consistent with this Nation's historical tradition of firearm regulation." *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023) (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2126 (2022)); *see id.* (that is the "only one way" "the government" can "defend [a] regulation" "when the Second Amendment's 'plain text' covers the regulated conduct"). And Illinois cannot point to any tradition remotely supporting such a ban, because there is none.

Second, HB 218 separately violates the Second Amendment by imposing burdens on all manner of commerce in arms, beyond just youth-model firearms. No historical tradition of firearm regulation can justify its draconian liability regime. Illinois cannot rely on centuries-old public nuisance law to justify HB 218. Congress itself recognized that suits seeking to make licensed industry members pay to redress harms caused by criminals, or to impose liability on firearm

17

manufacturers on the theory that they make and sell too many of their lawful products so as to constitute or contribute to a public nuisance, are "based on theories without foundation in hundreds of years of the … jurisprudence of the United States."  15 U.S.C. §7901(a)(7); *see also Camden*, 273 F.3d at 540-41 ("[E]xtend[ing] public nuisance law to embrace the manufacture of handguns would be unprecedented.").  The Third Circuit likewise explained that, under traditional public-nuisance doctrine—which is "confined to real property and violations of public rights" and which does not allow suits for damages resulting from criminals' unlawful acts—defendants "are not liable" unless they "control the misconduct of third parties" more immediately responsible for the harms for which redress is sought.  *Camden*, 273 F.3d at 541.  That is why the Supreme Court of Illinois refused to hold firearm industry members liable for public nuisance, describing such a "novel claim" as a "change of [significant] magnitude in the law."  *City of Chicago*, 821 N.E.2d at 1148.  Illinois' attempt to impose exactly this sort of novel tort liability cannot survive after *Bruen*.

### E.      HB 218 Exceeds Constitutional Limits on Extraterritorial State Regulation.

The Constitution restricts the power of states to directly regulate out-of-state conduct. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023).  HB 218 flouts that rule, as it imposes liability for conduct that is entirely out of state and entirely lawful where it occurred.

For instance, if a firearm produced at facilities in Ohio by a licensed manufacturer headquartered in Ohio is one day criminally misused in Illinois, then under HB 218 an Illinois judge could hold that Ohio manufacturer liable for failing to utilize what the judge considers "reasonable controls" at its Ohio plants—even if the manufacturer never sold a single firearm to anyone in Illinois, and even if it employed every safety measure that Ohio and Congress required. *See, e.g.*, Cupero Decl. ¶8 ("Smith & Wesson does not have any manufacturing operations in Illinois" and "does not sell directly to any civilian in Illinois.").  The Constitution does not permit this sort of extraterritorial regulation just because a product eventually finds its way into Illinois.

In fact, HB 218 is remarkably similar to an Indiana law that the Seventh Circuit held unconstitutional in *Legato Vapors, LLC v. Cook*, 847 F.3d 825 (7th Cir. 2017). That law "impos[ed] detailed requirements … on out-of-state manufacturing operations" for e-cigarettes, "dictat[ing] how out-of-state manufacturers must build and secure their facilities, operate assembly lines, clean their equipment, and contract with security providers, if any of their products are sold in Indiana." *Id.* at 827, 830. Given that direct regulation of out-of-state conduct, the Seventh Circuit held the statute unconstitutional. *Id.* at 830; *see also, e.g.*, *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 612-16 (9th Cir. 2018) (likewise enjoining a California law that purported to "dictate the method by which" companies treated medical waste "outside of California"). This case follows *a fortiori*, as HB 218 authorizes Illinois to control how a manufacturer *anywhere* operates its business if a criminal illegally brings a gun into Illinois and misuses it. Indeed, the only difference is one that HB 218 is even worse: Unlike the law in *Legato Vapors*, HB 218's "reasonable controls" provision does not even "detail[]" exactly what out-of-state industry members must do to comply.

The Constitution also "prohibit[s] States from discriminating against or imposing excessive burdens on interstate commerce." *Comptroller of Treasury of Md. v. Wynne*, 575 U.S. 542, 549 (2015). HB 218 does this too. Congress itself recognized that the kind of litigation HB 218 invites would impose an "unreasonable burden on interstate and foreign commerce of the United States." 15 U.S.C. §7901(a)(6). And rightly so; to allow states to use litigation to make the industry pay for actions of third parties over whom they have no control would render the Second Amendment a dead letter. Worse, since HB 218 creates liability based on the criminal conduct of third parties, NSSF members can do very little to lessen their risk of liability. Indeed, the only way to truly eliminate all risk of liability under HB 218 would be to cease operations altogether, in *every* state. If that is not an undue burden on interstate commerce, it is difficult to imagine what is.

## II.     The Remaining Factors All Favor Injunctive Relief.

The constitutional injuries outlined above suffice to satisfy the irreparable-injury factor. *See, e.g.*, *Am. C.L. Union of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (First Amendment); *Ezell*, 651 F.3d at 697-700 (Second Amendment).  But they do not stand alone.  First, as noted, the PLCAA confers not just a *defense* against liability, but an *immunity* from suit, *see* pp.2-3, *supra*; no court can make members whole for having to defend against suits that should never have "be[en] brought" in the first place.  *See* 15 U.S.C. §7902(a).  Second, HB 218 has already resulted, and will continue to result, in "the constriction of [the] market" for lawful arms.  That is not just Article III injury, *see Craig v. Boren*, 429 U.S. 190, 194 (1976), but *irreparable* injury here, thanks to the Eleventh Amendment, *see Cmty. Pharmacies of Ind., Inc. v. Ind. Fam. & Soc. Servs. Admin.*, 801 F.Supp.2d 802, 806-07 (S.D. Ind. 2011).  Third, the costs of complying with the unlawful requirements HB 218 appears to impose—by, e.g., training retailers, *see, e.g.*, Larson Decl. ¶9; Cupero Decl. ¶13—are also real-world, concrete injuries for which no remedy will be available.

The equities and public interest favor an injunction too.  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."  *Mitchell v. Baker*, 2015 WL 278852, at *7 (S.D. Ill. Jan. 21, 2015).  HB 218 encroaches on federal authority by flouting the PLCAA, *see United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497-98 (2001), and foments interstate conflict by setting Illinois up to judge lawful practices in other states, *see Hazardous Waste Treatment Council v. South Carolina*, 945 F.2d 781, 795 (4th Cir. 1991).  By contrast, "there can be no irreparable harm to a [government entity] when it is prevented from enforcing an unconstitutional statute."  *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004).

## CONCLUSION

The Court should grant a preliminary injunction.  And because the issues are purely legal, there is no reason to delay entering judgment in NSSF's favor.

Respectfully submitted,

PAUL D. CLEMENT[*]                     s/ Gary C. Pinter
ERIN E. MURPHY[*]                      GARY C. PINTER
MATTHEW D. ROWEN[*]                    SWANSON, MARTIN & BELL, LLP
CLEMENT & MURPHY, PLLC                 103 W. Vandalia Street
706 Duke Street                        Suite 215
Alexandria, VA 22314                   Edwardsville, IL 62025
                                       (618) 655-3131
[*] *pro hac vice*                     gpinter@smbtrials.com

                                       ANDREW A. LOTHSON[*]
                                       SWANSON, MARTIN & BELL, LLP
                                       330 N. Wabash
                                       Suite 3300
                                       Chicago, IL 60611

September 15, 2023

## <u>CERTIFICATE OF SERVICE</u>

  I certify that on September 15, 2023, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

<u>*s/ Gary C. Pinter*</u><br>
GARY C. PINTER
