# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>KWAME RAOUL,<br>in his official capacity as Attorney General of Illinois,<br><br>　　　　　　　Defendant. | Case No. 3:23-cv-02791-SMY |

### ATTORNEY GENERAL RAOUL'S
### 12(B)(1) AND 12(B)(6) MOTION TO DISMISS

**KWAME RAOUL**
Attorney General for the State of Illinois

**Kathryn Hunt Muse**
Deputy Chief, Public Interest Division
**Elizabeth B. Scott**
**Michael M. Tresnowski**
Assistant Attorneys General
Office of the Illinois Attorney General
100 W. Randolph Street
Chicago, IL 60601
*Attorneys for Defendant*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

STANDARD...................................................................................................................... 3

ARGUMENT .................................................................................................................... 4

    I.    NSSF fails to establish subject matter jurisdiction. ............................................ 4

        A.    NSSF does not establish associational standing.................................... 4

        B.    NSSF does not establish an injury......................................................... 5

                1.    NSSF does not identify who intends to do what. ...................... 7

                2.    NSSF does not identify an enforcement threat........................... 9

        C.    NSSF does not show causation or redressability. ............................... 11

        D.    NSSF's claims are not ripe.................................................................. 12

        E.    NSSF's declarations cannot cure its omissions.................................. 12

    II.    NSSF fails to state a claim upon which relief can be granted. ......................... 14

        A.    The complaint does not include sufficient facts................................. 14

        B.    The claims fail as a matter of law. ..................................................... 16

CONCLUSION................................................................................................................ 17

**INTRODUCTION**

On August 12, the Illinois Governor signed into law the Firearm Industry Responsibility Act ("FIRA"). Two days later, before it could be enforced, the national trade association for the firearms industry ("NSSF") filed this facial challenge. NSSF asks for a declaration that FIRA is unconstitutional and for an injunction against the Illinois Attorney General from enforcing it.

In its haste to request an advisory opinion on this new law, NSSF fails to plead basic information that is necessary to invoke the subject matter jurisdiction of this Court. NSSF seeks to bring claims on behalf of members, but it does not identify how any member has standing. It asks the Court to declare all four sections of FIRA unconstitutional, but does not describe conduct its members wish to engage in that is constitutionally protected and arguably proscribed by FIRA. Most important, it asks a federal court to engage in pre-enforcement review of a state statute and issue an injunction to enjoin a state official from enforcing that state law against 10,000 unidentified business entities, but does not identify a threat of enforcement against *a single entity*. Instead, the complaint sets forth an unsupported and provocative opinion about how this law is part of a decades-long conspiracy to bankrupt the firearms industry. It does not describe a case or controversy that allows the Court to weigh in on the abstract questions NSSF wants to discuss.

Even if the Court were able to exercise jurisdiction over one of NSSF's claims, the complaint still would be subject to dismissal under Rule 12(b)(6). Simply put, the complaint is all conclusions and no facts. NSSF attempts to: allege a preemption claim without identifying something to which the federal statute applies (Count I), assert a First Amendment claim without describing any speech (Count II), bring a due process claim without describing a deprivation of life, liberty, or property (Count III), invoke the protection of the Second Amendment without identifying an individual who cannot keep and bear arms (Count IV), and mount a dormant

commerce claim without describing any discriminatory intent (Count V). Further, all of these claims rely on mischaracterizations of FIRA and thus fail as a matter of law.

This Court should follow the lead of the Third Circuit Court of Appeals and decline to engage in pre-enforcement review of a state statute for which NSSF "has jumped the gun." *NSSF v. New Jersey*, 80 F.4th 215, 218 (3d Cir. 2023).

## BACKGROUND

**FIRA.** On August 12, 2023, the Illinois Governor signed into law FIRA, Ill. Public Act No. 103-0559 (attached as Exhibit 1).[1] It added a new section to the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Act"), which is generally enforceable by the Attorney General and private plaintiffs. *Id*.

Section (a) of FIRA defines its terms. Section (b) includes four distinct and severable components which each identify a different kind of prohibited business practice in the sale and marketing of firearm-related products. At a high level, (b)(1) prohibits knowingly creating dangerous conditions by conduct that is unlawful or unreasonable under all circumstances; (b)(2) prohibits advertising to promote unlawful paramilitary activity; (b)(3) prohibits advertising to

---

[1] The complaint refers throughout to "HB 218," however, the allegations make clear NSSF wishes to challenge the enacted law, not the bill. The State responds to allegations about HB 218 as if made against the public act. The complaint also cites to the act's provisions by citing 815 Ill. Comp. Stat. 505/2BBBB. However, the act has not yet been formally codified and is unlikely to be codified at that location. The General Assembly passed three bills amending the Consumer Act during its most recent session, and while bills reference the next available statutory section (2BBBB), only one will bear that numbering when codified. To avoid confusion with future house bills and other bills recently enacted, the State's filings will not refer to the act by its bill number or statutory section. Instead, the State refers and cites to the public act by its title, the Firearm Industry Responsibility Act, or "FIRA" for short. So, the complaint's citations to 815 Ill. Comp. Stat. 505/2BBBB-(b)(1) translate to FIRA § (b)(1).

encourage minors to engage in unlawful firearm use; and (b)(4) prohibits otherwise engaging in acts that are unfair or deceptive under the Consumer Act. Section (c) states that (b)(2), (3), and (4) are declarative of existing law. Section (d) states that the provisions of FIRA are severable.

**The complaint**. Two days after FIRA was enacted, and before FIRA was ever enforced, NSSF filed this action. ECF No. 1 ("Compl."). NSSF is a "trade association for the firearm, ammunition, and hunting and shooting sports industry" with a mission of "promoting a political environment." Compl. ¶ 8. It does not bring claims on behalf of itself, but brings claims on behalf of its members. *Id*. The complaint does not identify any particular members, but NSSF generally alleges that "[i]t has a membership of approximately 10,000 manufacturers, distributors, and retailers of firearms, ammunition, and related products, as well as other industry members throughout the United States." *Id.* NSSF names as a defendant Illinois Attorney General Kwame Raoul ("Attorney General" or "State").

In addition to not identifying its members, the complaint does not state what NSSF's members intend to do or identify an imminent injury. Instead, it (mis)characterizes laws and cites case law to argue there could be abstract conflicts between FIRA as a whole and federal law. The complaint lists five claims titled: (I) preemption, (II) First Amendment, (III) due process, (IV) Second Amendment, and (V) unconstitutional extraterritorial regulation. It requests (1) a declaration under 28 U.S.C. § 2202 that FIRA violates the U.S. Constitution and (2) injunctions enjoining the Attorney General from enforcing the entirety of FIRA. Compl. at p. 55–56.

NSSF served its complaint a month after filing, and the State files this timely response.

## STANDARD

A facial challenge to subject matter jurisdiction under Rule 12(b)(1) argues that the plaintiff has not sufficiently "*alleged* a basis of subject matter jurisdiction." *Silha v. ACT*, 807 F.3d 169,

173 (7th Cir. 2015) (internal citation omitted) (emphasis original). In a facial challenge, the court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id*. To survive a Rule 12(b)(6) motion, a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Nowlin v. Pritzker*, 34 F.4th 629, 634 (7th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I.       NSSF fails to establish subject matter jurisdiction.

NSSF's attack on the constitutionality of FIRA—untethered to any specific dispute between any NSSF member and the State—is not a "case" or "controversy" fit for resolution by a federal court. *See Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021). The Article III case-or-controversy requirement "limits federal courts to resolving concrete disputes between adverse parties." *Id*. To meet the Article III requirement, a plaintiff must satisfy the justiciability doctrines of standing and ripeness. *Id*. Without satisfying both doctrines, the Court is "left with a request for an advisory opinion" despite the fact "federal courts do not deal in advice." *Id*. at 561. NSSF's prematurely-filed complaint—containing only vague assertions of its intended conduct—establishes neither standing nor ripeness.

### A.       NSSF does not establish associational standing.

NSSF purports to bring this suit on behalf of its members. Compl. ¶ 8. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*,

432 U.S. 333, 343 (1977). At the very least, this requires an associational plaintiff to allege how at least one member "would have standing to sue in their own right." *Prairie Rivers Network v. Dynegy Midwest Generation*, 2 F.4th 1002, 1008 (7th Cir. 2021) (cleaned up).

NSSF merely alleges it "has a membership of approximately 10,000 manufacturers, distributors, and retailers of firearms, ammunition, and related products, as well as other industry members throughout the United States." Compl. ¶ 8. But it "does not identify any members, much less explain how those members would have standing to sue in their own right." *White v. Ill. State Police*, 15 F.4th 801, 807 (7th Cir. 2021). The Seventh Circuit has repeatedly held that such general allegations are insufficient under Article III. *See, e.g.*, *id.*; *Prairie Rivers*, 2 F.4th at 1009. For this reason alone, NSSF fails to establish standing to sue.

### B.    NSSF does not establish an injury.

NSSF also fails to establish an Article III injury. To establish standing, "a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (cleaned up). Plaintiff's injury "must be concrete and particularized, as well as actual or imminent." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (cleaned up). An "imminent" injury is one that is "certainly impending" and therefore "not too speculative for Article III purposes." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (cleaned up). "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). *See also NSSF v. New Jersey*, 80 4th at 219 ("a statutory violation is not enough to show standing").

Here, NSSF speculates the Attorney General may someday enforce FIRA against it or its

members. But the complaint fails to establish this threatened injury is certainly impending. The Supreme Court has "permitted pre-enforcement review," as NSSF seeks here, only "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony*, 573 U.S. at 159. There are two ways a plaintiff can satisfy this standard. First, a plaintiff may allege "an intention to engage in a course of conduct arguably affected by [the challenged statute], and that he faces a credible threat the [statute] will be enforced against him when he does." *Speech First v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020). Second, a plaintiff may allege "a chilling effect on his speech that is objectively reasonable, and that he self-censors as a result." *Id*. Under either showing, "the threat of enforcement or chilling effect" must "be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (cleaned up).

Although a plaintiff can make two types of allegations to obtain pre-enforcement review—an intended course of conduct *or* a chilling effect on speech—in practice, both tend to reduce to the same inquiry. *Speech First*, 968 F.3d at 639 n.1 ("these two showings have some degree of overlap" and "a credible threat of enforcement is critical" for both (cleaned up)). This is because "the chilling effect associated with a potentially unconstitutional law being on the books is insufficient to justify federal intervention in a pre-enforcement suit"; instead, Article III "require[s] proof of a more concrete injury." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 50 (2021) (cleaned up). As the Seventh Circuit recognizes, this requirement can be satisfied by an allegation that a member "self-censor[s]" based on a "realistic threat of legal sanction." *Speech First*, 968 F.3d at 639 n.1 (cleaned up). Thus, in most instances, plaintiffs allege their speech has been chilled *because* they face a credible threat of enforcement. *E.g.*, *Cassell v. Snyders*, 990 F.3d 539, 546 (7th Cir. 2021); *Bell v. Keating*, 697 F.3d 445, 454–55 (7th Cir. 2012); *Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004).

NSSF fails to allege "an intention to engage in a course of conduct arguably affected by [FIRA]." *Speech First*, 968 F.3d at 638. And since NSSF does not say what it wishes to do, it cannot establish that engaging in this conduct will subject it or its members to "a credible threat [FIRA] will be enforced against [them]." *Id.* The future injury NSSF anticipates is too speculative and uncertain to be considered "imminent" as required for Article III standing.

### 1.    NSSF does not identify who intends to do what.

A plaintiff seeking pre-enforcement review of a statute must "allege[ ] an intention to engage in *a course of conduct* arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony*, 573 U.S. at 159 (cleaned up) (emphasis added). Identifying the intended course of conduct is critical. Without knowing what the pre-enforcement plaintiff intends to do, it is impossible to determine whether that conduct is arguably proscribed by the challenged statute, much less whether it subjects the plaintiff to a credible threat of enforcement. *See Ind. Right to Life Victory Fund v. Morales*, 66 F.4th 625, 630 (7th Cir. 2023) ("It is a threshold requirement to establish a credible threat of enforcement that the statute actually cover the plaintiff's desired conduct.").

Here, NSSF does not bother to engage in the constitutionally required inquiry. It fails entirely to allege a course of conduct in which its members intend to engage. It describes only its members' general industry—they are "manufacturers, distributors, and retailers of firearms, ammunition, and related products" and alleges generally that their activity is "impaired." Compl. ¶ 8. This is not an allegation of a concrete and particularized injury, but rather a "bare assertion of harm—unsupported by any concrete details and tethered to no specific plaintiff." *Nowlin*, 34 F.4th at 633. Nor is there any reason to infer from the basic fact that NSSF's members participate in firearms commerce that they will do so unlawfully. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) ("For purposes of standing to seek injunctive relief against future harm, courts

generally assume that litigants will conduct their activities within the law and so avoid prosecution and conviction.").

Because NSSF fails to allege an intended course of conduct, it cannot establish, as it must, that this conduct arguably implicates a constitutional interest and is arguably proscribed by FIRA. This requirement is particularly crucial here because NSSF brings five distinct claims and FIRA contains four distinct prohibitions. Standing must be established "for each claim that [plaintiffs] press and for each form of relief that [plaintiffs] seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). And because FIRA expressly provides that its provisions are severable, FIRA § (d), NSSF's request to enjoin the statute is properly construed as a request for four separate injunctions for which standing must be separately established. *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2351 (2020) (explaining that "plaintiffs who successfully challenge one provision of a law may lack standing to challenge *other* provisions of that law" (emphasis in original)).

NSSF could only sustain such a broad challenge with allegations of a member's (1) specific business practices that violate Section (b)(1)'s reasonable controls requirement, (2) marketing practices that violate Section (b)(2)'s prohibition on promoting unlawful private militia activity, (3) marketing practices that violate Section (b)(3)'s prohibition on encouraging unlawful firearm use and possession by minors, and (4) other practices that violate Section (b)(4)'s reference to the Consumer Act. NSSF provides none of this, instead expecting standing to be "dispensed in gross" without specific allegations regarding each claim and form of relief. *See TransUnion LLC*, 141 S. Ct. at 2208. This is improper. "Constitutional litigation is not a game of gotcha against [the legislature], where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *Am. Ass'n*, 140 S. Ct. at 2351.

NSSF's recent failed challenges to comparable firearms regulations in New Jersey and Delaware similarly provided no specifics as to conduct, depriving the courts of jurisdiction. In *NSSF v. New Jersey*, the Third Circuit explained:

> The Foundation says little about what it plans to do. It has pleaded that it is an association of gun makers and sellers, and it has offered declarations that the Law chills its members' manufacturing, marketing, and sales. From that evidence, we can infer that its members plan to make, market, and sell guns. But that is all.

80 F.4th at 220. In *NSSF v. Jennings*, the court dismissed NSSF's claims for lack of standing, explaining that NSSF's claims were not distinguishable from its deficient challenge to New Jersey's law. No. 22-cv-1499, 2023 WL 5835812, at *2 (D. Del. Sept. 8, 2023). In this respect, NSSF's challenge to Illinois's law is no different. NSSF's alleged intended activity across the three lawsuits is nearly identical, and the complaint here also should be dismissed.

### 2. NSSF does not identify an enforcement threat.

Because NSSF does not allege its members' intended course of conduct, it cannot establish that engaging in this conduct will subject its members to "a credible threat [FIRA] will be enforced against [them]." *Speech First*, 968 F.3d at 638. And absent allegations of a particularized and credible enforcement threat, NSSF cannot establish an injury in fact sufficient for Article III standing. *Id.*; *see also Ind. Right to Life Victory Fund*, 66 F.4th at 629 ("A plaintiff may bring such a challenge only if they can allege a credible threat that the law will be enforced against them." (cleaned up)).

NSSF does not allege facts establishing a likelihood that FIRA will be enforced against any of its 10,000 members. NSSF identifies no such threat in its complaint, nor is there any evidence of such a threat elsewhere. This omission is fatal. When a plaintiff "[does] not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a

prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court." *Schirmer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010) (internal citation omitted).

Courts may look to the government's conduct—including its history of enforcement—to determine whether a credible threat of enforcement has been alleged. In *Susan B. Anthony List*, for example, the Supreme Court concluded "the threat of future enforcement of the [challenged] statute is substantial" because "there is a history of past enforcement here: [plaintiff] was the subject of a [recent] complaint" and prosecution. 573 U.S. at 164. Likewise, in *Holder v. Humanitarian Law Project*, the Supreme Court found it relevant that the government had "charged about 150 persons with violating" the challenged statute, and "that several of those prosecutions involved the enforcement of the statutory terms at issue." 561 U.S. 1, 15–16 (2010). Here, by contrast, it is undisputed that the Attorney General has not enforced FIRA against anyone, including NSSF's members. And NSSF fails to allege facts from which the Court can find that the Attorney General plans to enforce FIRA against one of its members.

This lack of an enforcement threat was decisive in NSSF's failed New Jersey challenge. The Third Circuit found NSSF had not shown a threat of enforcement by the New Jersey Attorney General. *NSSF v. New Jersey*, 80 F.4th at 220–22. Like here, the law had "not been enforced against anyone, let alone the Foundation or its members." *Id*. at 220. It was not enough that NSSF said the attorney general had set up an office to enforce the law or that the state said it would be used against "bad actors in the gun industry." *Id.* at 222. NSSF alleges neither here but, in any event, such generalized plans cannot provide a basis for a court to find a credible threat to a

particular entity. NSSF fails to allege its members face an imminent risk of enforcement.[2]

NSSF's failure cannot be cured. Under Article III, standing is determined at the time the action commences. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992). NSSF cannot file a deficient complaint and hope to use discovery to uncover the Attorney General's plans to retroactively satisfy Article III.

### C.   NSSF does not show causation or redressability.

Because NSSF fails to identify the first requirement for standing (an injury), it cannot satisfy the second (causal connection between the injury and the conduct complained of) and third requirements (a likelihood that the injury will be redressed by a favorable decision). There is simply no injury about which causation and redressability can be assessed, and these too provide independent bases for dismissal.

To the extent that NSSF seeks to enjoin a state attorney general from enforcing a state statute to prevent *nonparties* from injuring its members, the U.S. Supreme Court has explained that such a claim for relief is foreclosed: A "federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions. But under traditional equitable

---

[2] NSSF may try to distinguish the Third Circuit decision by pointing out that FIRA can be enforced by private plaintiffs in addition to the Attorney General. That does not change the analysis. No injury caused by a third-party lawsuit is redressable through relief against the State. NSSF cannot create a case or controversy with the State arising exclusively out its fear of absent third parties. *See Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir. 2001) ("[P]laintiffs lack standing to contest the statutes authorizing private rights of action, not only because the defendants cannot cause the plaintiffs injury by enforcing the private-action statutes, but also because any potential dispute plaintiffs may have with future private plaintiffs could not be redressed by an injunction running only against public prosecutors."). Indeed, a few weeks after the *New Jersey* order, a district court dismissed NSSF's challenge to Delaware's law despite NSSF pointing out this same distinction. *NSSF v. Jennings*, 2023 WL 5835812, at *2.

principles, no court may 'lawfully enjoin the world at large,' or purport to enjoin challenged 'laws themselves.'" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (cleaned up) (refusing to enjoin state attorney general from enforcing statute).

> **D.     NSSF's claims are not ripe.**

NSSF's inability to plead injury lays bare another independent reason the Court lacks subject matter jurisdiction over this lawsuit: NSSF's claims are not ripe. NSSF's reliance on hypothetical questions instead of particularized facts highlights the premature nature of NSSF's lawsuit. This matter is simply not ripe for adjudication. The issues here are not fit for judicial decision because NSSF, days after FIRA became law, has sought sweeping relief based entirely on speculative fears about future applications of FIRA. *See Sweeney*, 990 F.3d at 559–60 (noting the ripeness requirement prevents courts from "entangling themselves in abstract disagreements"). Ripeness demands an immediacy not present here.

> **E.     NSSF's declarations cannot cure its omissions.**

A month after filing its complaint, NSSF filed a motion for a preliminary injunction that attaches five declarations. ECF No. 27. While declarations are irrelevant on a facial challenge to jurisdiction, which looks exclusively at the allegations in the complaint, *Silha*, 807 F.3d at 173, NSSF may respond by asking for leave to amend its pleading with facts in the declarations. Such a request may be denied because the declarations do not cure the Article III defects.

First, three of the five declarants provide no insight on NSSF's associational standing because they do not declare that they are NSSF members.[3] *See* ECF No. 27-4, Hood Decl. (failing

_____

[3] NSSF will not be able to create standing by adding members after filing suit. *See Lujan*, 504 U.S. at 570 n.5.

12

to declare that Hood's Guns & More is an NSSF member); ECF No. 27-5, Larson Decl. (failing to declare that Rock River Arms is an NSSF member); ECF No. 27-2, Cupero Decl. ¶¶ 1, 5 (submitting the declaration on behalf of Smith & Wesson Inc. while stating that a different entity, Smith & Wesson Brands, Inc., is an NSSF member); Compl. (passim) (not naming any members). These declarations thus cannot establish standing.

Second, none of the declarants identify an actual injury. Two declarants allude to potential costs without describing them or explaining how they would be caused by FIRA. Before FIRA, all five declarants were subject to numerous federal and state laws governing firearms commerce. All these sources of law impose regulatory costs on firearms industry members. Neither the pleading nor the declarations attempt to describe any cost a member has taken or will take on to comply with any of FIRA's four substantive sections in particular. For Section (b)(1), the declarations only describe resources spent complying with other laws. *See* Cupero Decl. ¶ 13 (stating that any attempt to provide training to retailers in response to a lawsuit brought against it under a New York law would "cost Smith & Wesson time and money"); Hood Decl. ¶ 5 (stating that in 2019 and 2020 at "great cost and expense" he undertook security measures "to secure the store consistent with state and federal law"). These statements do not identify an Article III harm because an injury must be redressable through a favorable ruling. *Nowlin*, 34 F.4th at 633. An injunction of FIRA will not ensure Smith & Wesson does not need to comply with New York law, nor will it allow Hood's Guns & More to cease practices it has had in place for years to comply with other laws. For Sections (b)(2)–(4), the declarations also do not describe any costs—presumably because those "are declarative of existing law." FIRA § (c). As the Seventh Circuit recently explained, if a new statute "did not effect a change in the law" then "no harm can flow from it, and no harm can be

remedied by striking it down." *Boone v. Ill. Dep't of Corr.*, 71 F.4th 622, 626 (7th Cir. 2023).

Third, none of declarants describe a threat of enforcement. For example, none allege that the Attorney General has subpoenaed their business, or otherwise describe facts showing the Attorney General has threatened to enforce FIRA against them. Multiple declarants describe a generalized fear of liability but this alleged uncertainty does not constitute an Article III injury. *See, e.g.*, ECF No. 27-1, Imperato Decl. ¶ 20 (fearing the "prospect of severe liability"); Larson Decl. ¶ 13 (fearing it will "face substantial liability"). If anything, it only confirms the fact that none of these entities face any imminent enforcement threat. Without such a threat, none of the declarations describe a future injury to establish pre-enforcement standing. *Speech First*, 968 F.3d at 638–39 & n.1; *see also Bell*, 697 F.3d at 454–55 ("[A] plaintiff's notional or subjective fear of chilling is insufficient to sustain a court's jurisdiction under Article III.").

In sum, leave to amend the complaint with facts from the declarations would be futile because they only show that some fear what the future will hold. This does not give rise to a federal lawsuit.

## II.    NSSF fails to state a claim upon which relief can be granted.

Even if the Court had jurisdiction, the complaint should be dismissed pursuant to Rule 12(b)(6).

### A.    The complaint does not include sufficient facts.

The complaint falls short of pleading requirements. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing the pleader is entitled to relief." A plaintiff "armed with nothing more than conclusions" cannot meet Rule 8's plain statement requirement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79. Legal conclusions may provide the "framework of a complaint" but they must be supported by "factual allegations." *Id.* at 679. This

rule applies the same in the context of a pre-enforcement facial challenge, where a court must not "speculate about hypothetical or imaginary cases." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 476 (7th Cir. 2012) (internal quotations omitted); *see also United States v. Raines*, 362 U.S. 17, 22 (1960) ("The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined"). None of NSSF's five claims meet pleading standards.

**Count I does not identify a prohibited civil action**. The Protection of Lawful Commerce in Arms Act ("PLCAA") does two things: It prohibits the bringing of a "qualified civil liability action" in court, 15 U.S.C § 7902(a), and directs courts to dismiss "qualified civil liability action[s]" that were pending in 2005, *id.* § 7902(b). The complaint does not identify any civil liability actions, brought or pending. The Court thus has no action to analyze and find prohibited by PLCAA.

**Count II does not identify any speech**. NSSF does not describe a single form of speech that an NSSF member would purportedly engage in, if not for FIRA. Instead, it offers a series of conclusions. FIRA purportedly prohibits "vast swaths of fully protected expression," denies industry members "breathing space," and forces entities to "err on the side of refraining from exercising their First Amendment rights." Compl. ¶¶ 77, 80. There is no substance here. None of these allegations show with any specificity speech purportedly infringed by FIRA.

**Count III does not allege a deprivation**. NSSF's due process claim is premised on the argument that FIRA's "vagueness" imposes an unconstitutional "deprivation." Compl. ¶¶ 91–92. NSSF describes the deprivation in impossibly conclusory terms. NSSF states only that the purported vagueness of the law "restricts the activities" of those who sell arms. *Id.* ¶ 94. What activities? How are they restricted? NSSF does not say.

**Count IV does not allege an individual's rights have been burdened**. The Second Amendment of the U.S. Constitution provides "the right of the people to keep and bear Arms, shall not be infringed." The complaint does not describe how FIRA has infringed this right. NSSF does not identify any person who cannot bear or possess arms due to FIRA. Instead, it offers the legal conclusion that the Second Amendment protects "commerce in arms" and states that FIRA "infringes" this protection. Compl. ¶¶ 103–104. This is the sort of "formulaic recitation" of a cause of action's elements—repeating the language from the text of the Second Amendment without any additional details—that courts must disregard under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**Count V does not allege intentional discrimination.** NSSF's "unconstitutional extraterritorial regulation" claim is premised on its conclusion that FIRA directly regulates conduct that takes place entirely in another state. But NSSF completely neglects the requirement that it identify an out-of-state economic interest that Illinois purposefully discriminates against to state a claim under the dormant Commerce Clause. *Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1153 (2023). NSSF's speculative invitations to "imagine" retailers out-of-state who could face FIRA liability—without any allegation of intentional discrimination—do not meet its dormant Commerce Clause pleading burden.

All of the above are pleading defects subject to dismissal under Rule 12(b)(6).

**B.      The claims fail as a matter of law.**

Finally, even if the Court exercises jurisdiction over one of NSSF's claims, and even if the Court finds that claim includes sufficient facts to meet pleading standards, that claim would be subject to dismissal under Rule 12(b)(6) for failing to state a claim for relief as a matter of law. Regardless of NSSF's pleading, (1) PLCAA does not include a private right of action, and FIRA

is not in conflict with PLCAA, (2) FIRA does not regulate First Amendment protected speech, (3)

FIRA regulates with sufficient clarity to provide businesses with due process, (4) FIRA does not

infringe any individual's Second Amendment rights, and (5) FIRA complies with the dormant

Commerce Clause.

## CONCLUSION

For the reasons stated above, the Court should dismiss all Counts in the complaint, with

prejudice, for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim

under Rule 12(b)(6).


Dated: October 19, 2023                                Respectfully submitted,

                                                       KWAME RAOUL
                                                       Attorney General for the State of Illinois

                                                       /s/ Kathryn Hunt Muse

                                                       Kathryn Hunt Muse, No. 6302614
                                                       Elizabeth B. Scott, No. 6333329
                                                       Michael M. Tresnowski, No. 6324767
                                                       Office of the Illinois Attorney General
                                                       100 W. Randolph Street
                                                       Chicago, IL 60601
                                                       Kathryn.Muse@ilag.gov
                                                       Elizabeth.Scott@ilag.gov
                                                       Michael.Tresnowski@ilag.gov
                                                       (312) 814-3000

                                                       *Counsel for Attorney General Raoul*


Exhibit to follow:

1.      Firearm Industry Responsibility Act, Ill. Public Act No. 103-0559

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 19, 2023, I caused a copy of the foregoing motion to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

By: <u>/s/ *Kathryn Hunt Muse*</u>
Office of the Illinois Attorney General