UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION,<br><br>     Plaintiff,<br><br>     v.<br><br>KWAME RAOUL,<br>in his official capacity as Attorney General of Illinois,<br><br>     Defendant. | Case No. 3:23-cv-02791-SMY |

**ATTORNEY GENERAL RAOUL'S REPLY IN SUPPORT OF HIS
12(B)(1) AND 12(B)(6) MOTION TO DISMISS**

                 **KWAME RAOUL**
                 Attorney General for the State of Illinois

                 **Kathryn Hunt Muse**
                 Deputy Chief, Public Interest Division
                 **Elizabeth B. Scott**
                 **Michael M. Tresnowski**
                 Assistant Attorneys General
                 Office of the Illinois Attorney General
                 100 W. Randolph Street
                 Chicago, IL 60601
                 *Attorneys for Defendant*

NSSF's Consolidated Response, ECF 43 (Resp.), confirms it lacks standing for any of its claims, and confirms its allegations fail to state a claim for relief. *See* ECF 35 (MTD).

I.  **NSSF's Response confirms this Court does not have subject matter jurisdiction.**

*NSSF cannot wait to establish standing*. The State showed in its 12(b)(1) motion that NSSF failed to satisfy *any* of the required elements of an Article III injury, as NSSF described only its members' general line of business, rather than a specific course of conduct, MTD 7–9, and NSSF ignored the requirement to identify a credible threat of prosecution, *id*. at 9–11. NSSF acknowledges this pleading defect, but incorrectly argues it can file a pleading that is jurisdictionally deficient on its face so long as it cures the defect later in the litigation. Resp. 2. That is not the law. *See Silha v. ACT*, 807 F.3d 169, 173 (7th Cir. 2015).

*NSSF's declarations do not establish standing*. The Response ignores how the State explained the declarations do not cure the Article III defects, as no declarant identifies a single dollar an NSSF member lost or will lose due to FIRA, nor a single threat of enforcement. MTD 12–14. *See also Whole Woman's Health v. Jackson*, 595 U.S. 30, 50 (2021) ("[T]he chilling effect associated with a potentially unconstitutional law being on the books is insufficient to justify federal intervention in a pre-enforcement suit.") (cleaned up). Instead, NSSF incorrectly asserts that one fact and one conclusion in its declarations render its lawsuit justiciable. They do not.

First, NSSF argues retailer Recoil Armory suffered an injury because it decided to end its partnership with a youth hockey organization. Resp. 3–4. But "subjective chill" is not an Article III injury. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 420 (2013); *see also Speech First v. Killeen*, 968 F.3d 628, 639 n.1 (7th Cir. 2020) (Article III self-censoring must flow from "a realistic threat of legal sanction"). Recoil Armory ended its partnership without any indication that the State intends to use FIRA to regulate youth hockey. *Compare Brown v. Kemp*, 86 F.4th 745, 768–69 (7th Cir. 2023) (plaintiffs' self-censoring was reasonable when law enforcement repeatedly

1

stopped and questioned plaintiffs pursuant to the challenged statute) (cited in Resp. 4, 9).[1] Second, NSSF argues it has standing because declarants sell self-described "youth model" firearms they conclude are "banned" by FIRA Section (b)(3). But these legal (mis)interpretations of FIRA are conclusions—they do not provide facts that establish standing.[2] Declarants merely assert that they "plan to make, market, and sell guns," which is insufficient to show an imminent Article III injury. *NSSF v. New Jersey*, 80 F.4th 215, 220 (3d Cir. 2023).

*NSSF's change to its requested relief does not cure its defects*. Perhaps recognizing that neither its pleading nor its declarations justify its request to enjoin FIRA in its entirety, *see* Compl. at p. 55–56, NSSF now seeks separate, narrower injunctions for each claim, *see* Resp. 13–14. This strategy shift does not alleviate NSSF's Article III burden, as even on a pre-enforcement as-applied challenge, a plaintiff must show the "discrete and well-defined instances" in which any particular constitutional issue "is likely to occur." *Gonzales*, 550 U.S. at 167. NSSF's recharacterized request for relief does not solve the problem that it has not identified any injuries likely to occur. Its

---

[1] Further, even if Recoil Armory's decision had been prompted by an enforcement threat, that would only establish standing for an as-applied challenge to FIRA Section (b)(3) on a First Amendment claim regarding Section (b)(3)'s application to youth hockey partnerships. *See Gonzales v. Carhart*, 550 U.S. 124, 167 (2007) (noting pre-enforcement as-applied challenges may only be brought regarding the "discrete and well-defined instances" in which the constitutional issue "is likely to occur"). Then, even if that claim could go forward, the remainder of the complaint would need to be dismissed, as NSSF cannot rely exclusively on one marketing modification by a single member to bring over 10,000 dissimilarly situated members into federal court to enjoin a state official from enforcing the entirety of FIRA against any of them. *See generally TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (standing may not be "dispensed in gross").

[2] If declarants truly believed the law banned the sale of particular firearms, then presumably they would allege that they stopped selling products and are losing sales. They have not so alleged, perhaps because they recognize FIRA does not ban a class of firearms. Further, the lack of allegations showing customers have been affected by FIRA underscores the oddity that NSSF now suggests the Court apply a novel *double* derivative standing theory. Resp. 8. It is not clear that NSSF can assert claims on behalf of the customers of its members at all, *see* PI Opp. 31, but, if it could, it would need to plead facts showing customers have been injured.

inability to articulate appropriate relief results from the fact that it has suffered no harm.

The only injunction NSSF specifically describes amounts to a request for an advisory opinion. For its preemption claim, NSSF asks the Court to "enjoin the AG from using HB 218 to bring actions prohibited by the PLCAA." Resp. 15. But the Attorney General, like any other plaintiff, is already prohibited by PLCAA from bringing certain actions. And though PLCAA has been in place for more than 18 years, NSSF has not pointed to a single action the Attorney General brought that was prohibited by PLCAA. So, it seems NSSF is requesting that this Court issue an injunction which will have no effect—*i.e.* an order to follow a law the Attorney General is already following—in the hopes that this Court will issue an accompanying opinion that provides the Attorney General additional instruction on how to exercise his duties. This Court cannot issue such relief. *EEOC v. AutoZone*, 707 F.3d 824, 841 (7th Cir. 2013) (equitable principles foreclose "[a]n injunction that does no more than order a defeated litigant to obey the law").

*NSSF cannot create "gotcha" standing*. Finally, NSSF cannot conjure up standing by listing speculative scenarios for future lawsuits in a brief for a motion for preliminary injunction and then say "gotcha" when the State does not engage with and disavow every hypothetical. Resp. 5–6 (arguing that the State's failure to address NSSF's camouflage hypothetical is "dispositive of the standing inquiry"). The question for this Court on this 12(b)(1) motion is whether NSSF came to court alleging an actual or imminent injury—not whether counsel here has responded to each of NSSF's hypotheticals. Only after a plaintiff first meets its burden of showing "a reasonable basis for concern that he might be prosecuted" would a court consider whether the State has made a "clear disavowal" of enforcement. *Lawson v. Hill*, 368 F.3d 955, 959 (7th Cir. 2004); *see also Brown*, 86 F.4th at 769–70 (finding no "clear disavowal of enforcement that would undermine plaintiffs' reasonable fear of prosecution"). NSSF has not met its burden, and its attempts to point

3

to the Attorney General's unrelated brief to create standing are a red herring.

**II.     NSSF's Response confirms it has failed to state a claim.**

None of NSSF's allegations state a claim for relief. Count I for "preemption" is not based on any private right of action, as PLCAA by its own terms creates no such right. MTD 16–17. NSSF asks this Court to find one in Section 1983 or create one in equity. Resp. 18–19. But Section 1983 does not create a private right where a statute states there is none, and *Ex Parte Young* does not authorize courts to contort a defensive remedy into an offensive right. ECF 36, PI Opp. 9–10. Count I is independently subject to dismissal because FIRA does not conflict with PLCAA. MTD 16–17. PLCAA prohibits bringing certain actions; FIRA is not an action. *Id.* at 15. NSSF ignores this and tries to hit a square nail into a round hole. Resp. 15–17. Wordplay cannot disguise that there is no action for this Court to dismiss pursuant to PLCAA and nothing to declare "preempted."

Counts II and III must be dismissed as NSSF has not identified speech or conduct it would engage in but for FIRA's purported vagueness, nor does it identify any part of FIRA that regulates protected speech. MTD 15, 17. NSSF's argument that Section (b)(1) regulates protected speech is unsupported by any particularity or substance. Indeed, the State did not even understand NSSF to be purporting to challenge Section (b)(1) on First Amendment grounds given the complete absence of allegations to support such a claim. *See* PI Opp. 18 n.6. In response, NSSF does not point the Court to complaint paragraphs (or declarations) where NSSF describes speech it wishes to engage in that is proscribed by Section (b)(1). *See* Resp. 19–20. It doesn't because it has none. Instead, it pivots to arguing the State "waived" its defense. *Id.* The State has not: The motion clearly requested the Court strike Count II in its entirety. MTD 15, 17. Next, NSSF's argument that Sections (b)(2) and (b)(3) are unconstitutional ignores the fact that, by their plain language, those sections only regulate unprotected commercial speech about unlawful activity. *See* PI Opp. 17–20. Finally,

NSSF's claim that FIRA blurs the line between speech about lawful and unlawful activity, as well as NSSF's vagueness arguments, ignores FIRA's robust guidance. *Id*. at 23–27.

Count IV must be dismissed because NSSF has still not identified any conduct regulated by FIRA protected by the Second Amendment. In response, NSSF argues the Second Amendment allows conditions "at the point of sale," but "not three entities up the chain." Resp. 31. This argument completely loses sight of the *individual* right protected. *See D.C. v. Heller*, 554 U.S. 570, 579–80 (2008). It defies logic that conditions one step away from a customer are permissible, but those multiple steps up the production chain are subject to constitutional scrutiny. Nor can NSSF save Count IV by isolating one of Section (b)(3)'s illustrative considerations in its "totality of the circumstances" standard and then casting it as a ban on a class of firearms. *See* Resp. 27–30. If the General Assembly wants to prohibit selling firearms, it knows how—months prior to FIRA, it restricted assault weapons with a detailed definition. *E.g.*, 720 ILCS 5/24-1.9. But even if FIRA restricted selling some firearms, NSSF would still fail to state a claim because the Second Amendment protects the right of law-abiding, responsible citizens to possess "weapons in common use for self-defense." *Bevis. v. Naperville*, 85 F.4th 1175, __ (7th Cir. 2023). It does not protect the rights of gun dealers to sell weapons for minors' recreational use. *See, e.g.*, ECF 27-1, Imperato Decl. ¶ 13 (describing its product as "the perfect rifle for introducing youngsters to shooting and hunting" and another as "kids won't mind toting it to the range or through the woods"). While that use can be lawful (as FIRA itself recognizes), the question here is whether it is protected by the plain text of the Second Amendment. It is not.

Finally, Count V must be dismissed because FIRA does not violate the Commerce Clause under any theory advanced by NSSF. *See* MTD 16, 17; PI Opp. 32–34. The motion to dismiss should be granted.

Dated:  December 11, 2023

Respectfully submitted,

KWAME RAOUL
Attorney General for the State of Illinois

<u>/s/ Kathryn Hunt Muse</u>

Kathryn Hunt Muse, No. 6302614
Elizabeth B. Scott, No. 6333329
Michael M. Tresnowski, No. 6324767
Office of the Illinois Attorney General
100 W. Randolph St.
Chicago, Illinois 60601
Kathryn.Muse@ilag.gov
Elizabeth.Scott@ilag.gov
Michael.Tresnowski@ilag.gov
(312) 814-3000

*Counsel for Attorney General Raoul*

6